UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In Dime We Trust, RLT, a Texas Revocable Living Trust, by and through Rita Haney, Trustee,<br><br>Plaintiff,<br><br>v.<br><br>Armadillo Distribution Enterprises, Inc., a Florida corporation, d.b.a. Dean Guitars; Concordia Investment Partners, LLC, a Florida limited liability company<br><br>Defendants. | Case No.: |

## PLAINTIFF IN DIME WE TRUST, RLT'S COMPAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff In Dime We Trust, RLT, a Texas Revocable Living Trust by and through its trustee Rita Haney ("Plaintiff"), and by and through its counsel, Avyno Law P.C., in its complaint against Armadillo Distribution Enterprises, Inc., a Florida corporation, d.b.a. Dean Guitars, and Concordia Investment Partners, LLC, a Florida limited liability company ("Defendants"), alleges as follows:

1

## The Parties

1.       Plaintiff is a Texas revocable living trust, with its trustee having a residence in Tarrant County, Texas and Los Angeles County, California.  Plaintiff is the owner of all properties and intellectual properties related to the estate of Darrell Lance Abbott, also known as Dimebag Darrell, Dimebag or Dime ("Abbott").

2.       Defendant Armadillo Distribution Enterprises, Inc., d.b.a. Dean Guitars ("Defendant Dean Guitars") is a Florida corporation with its principal place of business in Clearwater, Florida. Defendant manufactures, distributes and sells guitars, acoustic guitars, basses, and other musical instruments and products, within the jurisdiction and venue of this Court.

3.       Concordia Investment Partners, LLC ("Defendant Concordia") is a Florida limited liability company with its principal place of business in Clearwater, Florida.

4.       Upon information and belief, Defendant Dean Guitars and Defendant Concordia are under common control and ownership and was and are being used as affiliated companies. Upon further information and belief, Defendant Dean Guitars and Defendant Concordia were each being used and acting as the agent, servant and representative of the other company, with the knowledge, consent and permission of the other company.

2

**Jurisdiction and Venue**

5.      This action seeks preliminary and permanent injunctive relief, damages, and other appropriate relief arising under the laws of the United States, specifically, claims for unfair competition, false association, false endorsement, false designation of origin and false advertising. Accordingly, this Court has original jurisdiction under the Lanham Act, 17 U.S.C. §501; 15 U.S.C. §1121; 28 U.S.C. §§1331, 1338.

6.      Any claims arising under Florida statutory and common law are so related to the federal claims asserted herein that they form a part of the same case or controversy.  Accordingly, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1338(b) and 1367(a).

7.      Moreover, this Court has diversity jurisdiction over this matter per 28 U.S.C. §1332 because there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

8.      A substantial part of the events giving rise to the claims asserted occurred in this District.  Therefore, venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2).

9.      Defendants are subject to the personal jurisdiction in this District. Therefore, venue is also proper in this District pursuant to 28 U.S.C. §1391(b)(3).

## Factual Background

10.    Abbott, best known by his stage name Dimebag Darrell, was a world-famous American musician and songwriter.  He was a co-founder and guitarist of the heavy metal bands Pantera and Damageplan.

11.    Abbott was ranked No. 92 on Rolling Stone's list of "The 100 Greatest Guitarists of All Time" in 2011, and No. 19 on Louder's list of "The 50 Greatest Guitarists of All Time" in 2018. He placed at No. 5 on Gibson's list of "The Top 10 Metal Guitarists of All Time" in 2015, and the same year was ranked as the most influential metal guitarist of the past 25 years by VH1.  In 2000, his June 1996 Guitar World cover was also listed as the fourth greatest Guitar World cover of all time, and he is also featured among other guitarist on the second greatest Guitar World cover of all time.

12.    Given the timeless nature of Abbott's fame as a heavy metal guitarist, his appeal continues to endure, and his fan base remains strong and loyal. As a result of Abbott's undisputed success, both as a member of Pantera and Damageplan, and his fame as one of the best and most influential heavy metal guitarists, his name and likeliness enjoys instant name recognition. Abbott has been coined by many as a guitar legend.

13.    Plaintiff is the owner of properties, including intellectual property, related to the estate of Abbott, and all rights of publicity to Abbott's name and

likeness, including, but not limited to, the artwork on Abbott's guitar, the "Dean from Hell" (the "Dean from Hell Artwork"), which artwork is the subject of a pending US Copyright application.

14.    On or about November 11, 2004, Defendant Dean Guitars entered into an endorsement agreement with Abbott under which Abbott agreed to endorse a signature line of guitars made by Defendant Dean Guitars and under which Abbot licensed his name, likeness, photographs and endorsement in connection with Defendant Dean Guitar's manufacture, distribution, advertisement, promotion and sales of such signature line of Dean guitars, and related equipment and products, which agreement was amended by an instrument dated October 9, 2008 (the "Original Endorsement Agreement").  The Original Endorsement Agreement also authorized the endorsement of a clothing line.

15.    The Original Endorsement Agreement provided for a royalty to Abbott on sale proceeds, and obligated Defendant Dean Guitars to pay Abbott a lump sum amount for each full front cover bearing Abbott's photograph that included the Dean Guitar headstock with Dean Guitar logo and trademark being prominently displayed.

16.    Further, the Original Endorsement Agreement also provided Abbott with imported and domestically produced models of each line of guitars Abbott

endorsed, as well as a set number of domestically produced models and imported models for personal and promotional use.

17.     The Original Endorsement Agreement also expressly stated that Dean Guitar's acquired no rights in the tradenames or designs for the "Stealth Guitar" or "Razorback Guitar," and upon termination of the agreement would cease selling the guitar.

18.     Shortly after entering into the Original Endorsement Agreement, on the evening of December 8, 2004, Abbott tragically lost his life when an obsessed and deranged fan shot and killed Abbott during a Damageplan show at the Alrosa Villa Night club in Columbus, Ohio.  Four other people lost their lives that evening, including the shooter, a Damageplan crew member, Jeffrey "Mayhem" Thompson, a club employee, Erin Halk, and a fan, Nathan Bray, who attempted to aid Abbott and Thompson.

19.     Abbott's death was highly publicized. To this day, Abbott's family, friends and a very loyal fan base have kept Abbott's memory alive and legacy strong.  Abbott's presence remains, and his legacy continues through annual bashes thrown in his memory, performance and recordings giving tribute to Abbott, and full cover magazine photos featuring and remembering Abbott, in publications such as Guitar World, Guitar Player and Revolver, including multiple Guitar World magazine covers and special collector additions.  In many of these cover

photos, Abbott is shown playing guitars produced by Defendant Dean Guitars, where Defendant Dean Guitar's name and logo are prominently displayed. True and correct examples of these covers are shown on **Exhibit A**.

20.     On or about April 2014, Abbott's estate reinstated and amended the Original Endorsement Agreement with Defendant Dean Guitars (the "Reinstated Endorsement Agreement").  The Original Endorsement Agreement and the Reinstated Endorsement Agreement are collectively referred to as the "Endorsement Agreement."

21.     In the Reinstated Endorsement Agreement, Abbott's estate agreed for Abbott to continue to endorse the signature line of guitars made by Defendant Dean Guitars.  The Reinstated Endorsement Agreement licensed Abbott's name, likeness, photographs and endorsement in connection with Defendant Dean Guitar's manufacture, distribution, advertisement, promotion and sales of such signature line of Dean guitars.  In the Reinstated Endorsement Agreement, Defendant Dean Guitars' use of the name and likeness of Abbott in the production and sale of guitars was limited to guitars and other stringed instruments only, and did not include related equipment and products.

22.     The Reinstated Endorsement Agreement reduced the royalty on Abbott endorsed guitars and clothing.

23.     The Reinstated Endorsement Agreement also obligated Defendant

Dean Guitars to pay Abbott's estate a lump sum amount for each full front page

cover bearing Abbott's photograph that included the Dean Guitar headstock with

Dean Guitar logo and trademark being prominently displayed.  However, the

Reinstated Endorsement agreement limited this obligation to full front page covers

for the following magazines:  Guitar World, Guitar Player and Revolver.

24.     The Reinstated Endorsement Agreement continued to obligate

Defendant Dean Guitars to provide Abbott's estate with imported and domestically

produced models of each line of guitars Abbott endorsed, and reiterated that

Defendant Dean Guitar's acquired no rights in the tradenames or designs for the

"Stealth Guitar" or "Razorback Guitar," and upon termination of the Endorsement

Agreement would cease producing these style guitars.

25.     The Endorsement Agreement naturally terminated on April 30, 2020.

The Endorsement Agreement included a six month sell off period, which ended on

October 30, 2020.

26.     While Defendant Dean Guitars expressed a continued interest in

Abbott's endorsement of Dean guitars post-termination of the Endorsement

Agreement, Defendant Dean Guitars and Ms. Rita Haney, the trustee of Plaintiff,

could never reach an agreement on terms of a continued business relationship.

8

27.     As further background, Ms. Rita Haney was Abbott's significant other and life partner from the age of 17 until his untimely death in December 2004.  Ms. Haney and Abbott knew each other since they were 8 years old. With Abbott being an important public figure and a touring musician for decades, Ms. Haney performed duties as Abbott's personal assistant for both his personal and business affairs.

28.     As Abbott's personal assistant, Ms. Haney was heavily involved in the contract negotiations with Dean Guitars for the Original Endorsement Agreement, knew the nuts and bolts and spirit of the deal, and was responsible for negotiating its terms. Ms. Haney knew what Abbott wanted during his time on earth as well as his legacy. As one of the world's most talented guitar players, the "guitar" was Abbott's life and it was the guitar that enabled Abbott's rise to fame and stardom.

29.     Abbott's endorsement of Dean guitars doubled the size of Defendant Dean Guitars sales in 2 short years with first year's sales of Dimebag models topping $6 million. Abbott's endorsement and international notoriety grew Dean Guitars international presence practically overnight. The demand for Dimebag endorsed guitars was so big, it enabled Defendant Dean Guitars to instantly grow its worldwide distribution network. Defendant Dean Guitars was even able to leverage Abbott's endorsement to help sell the rest of the brand. In short, Abbott's endorsement of Dean guitars was a huge success for Defendant Dean Guitars.

9

30.     Due to Abbott's untimely death at the young age of 38, he died without a will. Subsequently, Ms. Haney lost control of the estate and thus the management of Abbott's endorsement deal with Defendant Dean Guitars.

31.     After Abbott's death, Vincent Abbott became the administrator of Darrell's estate.  Abbott's brother and father together managed the estate.  With Ms. Haney conveniently out of the picture, Defendant Dean Guitar's then CEO Elliott Rubinson used the substantial money from royalties earned by Abbott to manipulate Vincent and water down Abbott's endorsement in the Reinstated Endorsement Agreement.  With Ms. Haney cut out, Ms. Haney had no knowledge of any negotiations surrounding the Reinstated Endorsement Agreement, or its terms.

32.     After Vincent Abbott's death in 2018, the Abbott family eventually reinstated Ms. Haney as the rightful steward of Darrell Abbott's affairs on 6/17/2020.  When Ms. Haney began acting as trustee of the estate in June 2020, Ms. Haney learned, for the first time, that the Reinstated Endorsement Agreement reduced the percentage royalties due to Abbott's estate from that of the Original Endorsement Agreement to a percentage that was unreasonable for an exclusive licensee.

33.     Furthermore, Ms. Haney recently discovered that Defendant Dean Guitars had breached the Endorsement Agreement by failing to pay and perform

certain obligations under the Endorsement Agreement, and further that Defendant

Dean Guitars converted certain of Dime's assets as its own though the use of its

affiliate and co-Defendant Concordia.

34.     With Defendant Dean Guitar's CEO Elliott Rubinson death in 2017,

Ms. Rita Haney, once she took over the estate in June 2020, found herself working

with the new CEO of Defendant Dean Guitars, Evan Rubinson, the son of the late

Elliott Rubinson. Ms. Haney, however, found it quite difficult to work with Evan

Rubinson. Ms. Haney found Evan to be incredibly disrespectful and often times

belligerent to the legacy of Abbott.  He acted without regard for the success Abbott

brought to his father's company, and to which ultimately contributed to his

inheritance.

35.     Given the misdealings uncovered by Ms. Haney, she felt that

Defendant Dean Guitar's had taken complete advantage of Abbott over the years

and refused to continue a business relationship with Defendant Dean Guitars unless

Defendant Dean Guitars was willing to right its wrongs.

36.     On June 28, 2021, during a meeting between Ms. Haney and Evan

Rubinson, it became clear that there was no possibility that Plaintiff could use

Abbott's name and likeness to continue to endorse Dean guitars.  Ms. Haney felt as

though Evan Rubinson, the new President and CEO of Defendant Dean Guitars,

lacked complete and utter respect for Abbott's legacy and failed to appreciate

11

Abbott's long-standing endorsement and commitment to Defendant Dean Guitars and its products.  Mr. Rubinson has no intention of righting the wrongs previously done to Abbott and his estate.  In fact, Mr. Rubinson told Ms. Haney that it was time for her to go elsewhere.

37.    On the following day, Ms. Haney had her attorney send a letter to Defendant Dean Guitars, reminding Defendant Dean Guitars that the Endorsement Agreement terminates on April 30, 2020, the sell-off period was over, and offering an amicable and private unwinding before seeking to enjoin the continued use of the Abbott's name and likeness.  A true and correct copy of this letter is attached as **Exhibit B**.

38.    In response to the letter dated June 29, 2021, Mr. Rubinson responded "Your complaints are baseless — please serve me with an official lawsuit …."

39.    Despite: (i) the termination of the Endorsement Agreement on April 30, 2020; (ii) the expiration of the six month sell off period, which ended on October 30, 2020; and (iii) Dean Guitar's clear notice that it has no continued rights under the Endorsement Agreement to use Abbotts name, likeness and endorsement, Defendant Dean Guitars has continued to use the name, likeness and photographs of Abbott to sell guitars, merchandise, clothing, pick-ups and guitar straps that include Abbott's artwork, including the copyrighted Dean from Hell artwork, and the Razorback and Stealth style guitars and trademarks.

12

40.    As illustrated on **Exhibit C**, which is a true and correct image of the webpage https://www.deanguitars.com/artist?name=dimebag-darrell captured on July 17, 2021, Defendant Dean Guitars is using Abbott's name, likeness and photographs of Abbott to promote a signature line of sixteen guitars. All of the guitars in the line use either Abbott's name (Dime, Dimebag or Dimebag Darrell) or his trademarks STEALTH or RAZORBACK as the brand name for the guitar.

41.    Further, as illustrated on **Exhibit C**, five guitars in the line use Abbott's Razorback design: (1) USA Dime Razorback Dime Slime; (2) USA Dime Razorback Flame Top; (3) Razorback Lightning; (4) Dime Razorback Rust w/Case; and (5) Razorback DB Classic Black.  Three guitars in the line use Abbott's Stealth style guitars: (1) USA Dime Stealth Flame Top Floyd; (2) Stealth Floyd FM Dime Slime w/Case; and (3) Stealth Floyd FM Trans Brazilla w/Case. Two ML guitars uses Abbott's Dean from Hell Artwork or a derivate thereof: (1) Dimebag Dean From Hell ML and (2) Razorback Lightning. One ML guitar uses Abbott body profile:  Dimebag Dime O Flange ML.  One ML guitar uses photographs of the band Pantera, that include Abbott's image: the Dean Dimebag Cowboys ML Electric Guitar.

42.    Defendant Dean Guitar's also sells electric guitar pickups using Dime's name, and which are branded DIMETIME.  **Exhibit D** is a true and correct

image of the webpage https://shop.deanguitars.com/collections/dmt-dime-time captured on July 17, 2021.

43.     Defendant Dean Guitar's also sells mini guitar models of the Dean Dimebag Darrell Dean from Hell Lightning bolt using Abbot's name and Abbott's Dean From Hell Artwork. **Exhibit E** is a true and correct image of the web pages https://shop.deanguitars.com/collections/swag/products/licensed-dean-dimebag-darrell-from-hell-lightning-bolt-mini-guitar-model captured on July 17, 2021, showing the Dean Dimebag Darrell FROM HELL Lightning Bolt Mini Guitar Model for sale through the Dean Guitar's website.

44.   To Plaintiffs knowledge, Defendant Dean Guitars never paid the lump sum contracted amount for each full front page cover bearing Abbott's photograph that included the Dean Guitar headstock with the Dean Guitar logo and trademark being prominently displayed.

45.     Defendant Dean Guitars, despite numerous requests and assurances that the guitars were forthcoming, never provided imported and domestic models for each line of endorsed guitars produced by Defendant Dean Guitars, or all the guitars for personal and promotional use.

46.     Despite Defendant Dean Guitars expressly acknowledging that it had no rights in the tradenames or designs "Stealth Guitar" or "Razorback Guitar," Defendant Concordia, presumably acting as an agent for Defendant Dean Guitars,

14

filed at least two unauthorized and fraudulent trademark registrations for Razorback guitars in its name: (1) US Trademark Registration No. 3,562,989 for the following mark covering the Razorback Guitar design in connection guitars:



and (2) US Trademark Registration No. 3,644,934 for the mark RAZORBACK for guitars. **Exhibit F** is a true and correct copy of US Trademark Registration No. 3,562,989 as found in the Trademark Electronic Search System (TESS). **Exhibit G** is a true and correct copy of US Trademark Registration No. 3,644,934 as found in TESS.

47.      Then, without the knowledge of Abbott, Abbott's estate and/or Plaintiff, Defendant Concordia assigned all its rights in US Trademark Registration No. 3,644,934 for the mark RAZORBACK for guitars in 2009 to the Board of Trustees of the University of Arkansas. **Exhibit H** is a true and correct copy of the assignment records for US Trademark Registration No. 3,644,934 as found in TESS.

48.     Defendant Dean Guitars and Defendant Concordia further acquired ownership of US Trademark Registration No. 2,588,629 in connection with stringed musical instruments, namely guitars and basses on December 1, 2004, shortly after entering into the Original Endorsement Agreement with Abbott, for the following guitar shape:



49.     The guitar shape that is the subject of US Trademark Registration No. 2,588,629 (shown above), is a guitar design that Abbott previously endorsed under contract with Washburn, known as the Dime3 and to which Abbott acquired perpetually rights to use upon termination of the Washburn agreement, which terminated in September 2004. **Exhibit I** is a true and correct copy of US Trademark Registration No. 2,588,629 and its assignment records as found in TESS, which rights when acquired, were assigned solely to Defendant Concordia.

50.     Because US Trademark Registration No. 2,588,629 for the Dime3 was acquired after Abbott entered into the Original Endorsement Agreement with Defendant Dean Guitars, was the subject of a previously endorsed product of Abbott, and the subject of a product design which Abbott maintained rights, the trademark should have been acquired in the name of Defendant Dean Guitars and

Abbott jointly, with each having the right to use the mark after termination, pursuant to the terms of the Original Endorsement Agreement.

51.     Defendant Dean Guitars has breached the Endorsement Agreement in that it: (i) never paid the contracted amount for each full cover photo that has been printed with Abbott playing a Dean guitar, with the Defendant Dean Guitars' logo and/or trademark prominently displayed; (ii) failed to provide the imported and domestic models for each line of Abbott endorsed guitars produced by Defendant Dean Guitars, and other guitars for personal and promotional use; (iii) fraudulently, in conjunction with Defendant Concordia and without the knowledge of Abbott, registered the trademark for RAZORBACK and the Razorback guitar design, which were both the sole property of Abbott, in Defendant Concordia's name; (iv) in conjunction with Defendant Concordia, transferred the RAZORBACK trademark, which was the sole property of Abbott, to a third party without the knowledge of Abbott; and (v) in conjunction with Defendant Concordia, acquired the registered trade dress for the guitar design known as the Dime3 in its own name, without Abbott's knowledge, and without recognizing Abbott as a joint owner.

52.     Further, it is unclear how Dean Guitars acquired the rights to use Dime's artwork, including the Dean from Hell artwork, on the endorsed guitars, as the Endorsement Agreement provides for no such license to Defendant Dean

Guitars and the majority of the artwork was created and used by Abbott prior to entering into the Endorsement Agreement with Defendant Dean Guitars.

53.    While Defendant Dean Guitars claims to have had a license to use Abbott's Dean From Hell Artwork, the Endorsement Agreement never grants Defendant Dean Guitars the right to use any of the Dime's artwork (much of which predates the Original Endorsement Agreement), including the Dean From Hell Artwork, or Abbott's Razorback or Stealth trademarks or Razorback or Stealth guitar designs.  In fact the Endorsement agreement does not grant Defendant Dean Guitars the right to use the guitar pickups branded DIMETIME or the Dean from Hell guitar straps.  The Endorsement Agreement only licenses Defendant Dean Guitars the use of Abbott's name, likeness, photographs and endorsement of the "Endorsed Products" as defined in the Endorsement Agreement. Defendant Dean Guitars has never compensated Abbott for the use of the Dean From Hell Artwork, the Razorback or Stealth trademarks or Razorback or Stealth guitar designs.

54.    Without the knowledge of Abbott, Abbott's estate and/or Plaintiff, Defendant Dean Guitars and Defendant Concordia colluded and illegally and fraudulently filed trademarks on the Razorback trademark and guitar design with the USPTO in its own name, unlawfully converting Abbott's assets into its own.

55.    Despite the termination of the Endorsement Agreement, Defendant Dean Guitars continues to unlawfully use, without a license, authorization or other

permission from Plaintiff: (i) Abbott's name and likeness, photographs of Abbott in connection with the sale of Dean guitars and merchandise, including but not limited to clothing, miniature replica guitars, guitar straps and guitar pick-ups; (ii) Abbott's artwork, including the Dean from Hell Artwork, on Dean guitars and guitar straps; (iii) the Razorback trademark rightfully owned by Abbott; (iv) the Razorback guitar design rightfully owned by Abbott; (v) the Stealth trademark, rightfully owned by Abbott; and (vi) and the Stealth guitar design, rightfully owned by Abbott, all to unlawfully capitalize on Abbott's celebrity status as a famous musician for the purpose of driving sales of Defendant Dean Guitars' products.

56.     Defendant Dean Guitars has and is knowingly and willfully producing, distributing and advertising products with the knowledge that it lacked and continues to lack a license or permission to use Abbott's name and likeness, Abbott's artwork, including the Dean From Hell Artwork, and the Razorback and Stealth trademarks and Razorback and Stealth guitars designs for its commercial purposes.

57.     Due to Defendants continued unauthorized use of Abbott's name and likeness, Abbott's artwork, including the Dean From Hell Artwork, and the Razorback and Stealth trademarks and Razorback and Stealth guitars designs, Plaintiff has and will continue to suffer damages, in addition to those already

19

suffered by Defendants breach of the Endorsement Agreement and fraudulent

acquisition of registered trademarks for Plaintiffs solely owned trademarks and

designs.

## COUNT I

### (Against Defendant Dean Guitars)
### Breach of Written Agreement

58.     Plaintiff repeats and re-alleges each allegation set forth above as if set

forth fully herein.

59.     On or about November 11, 2004, Defendant Dean Guitars entered into

the Original Endorsement Agreement with Abbott, which agreement was amended

after his death by an instrument dated October 9, 2008. On or about April 2014,

Abbott's estate entered into the Reinstated Endorsement Agreement with

Defendant Dean Guitars.

60.     Abbott, his estate and Plaintiff have fully complied with and

performed all conditions, covenants, agreements, terms and promises under the

Endorsement Agreement and any modifications or additions to be done or

performed on their part, or was otherwise excused or discharged from further

performance under the Endorsement Agreement.

61.     Defendant Dean Guitars has breached the Endorsement Agreement in

that it: (i) never paid the contracted amount for each full cover photo that have

been printed with Abbott playing a Dean guitar, with the Defendant Dean Guitars'

20

logo and/or trademark prominently displayed; (ii) failed to provide the imported and domestic models for each line of Abbot endorsed guitars produced by Defendant Dean Guitars, and other guitars for personal and promotional use; (iii) fraudulently, in conjunction with Defendant Concordia and without the knowledge of Abbott, registered the trademark for RAZORBACK and the Razorback guitar design, both of which were the sole property of Abbott, in Defendant Concordia's name; (iv) in conjunction with Defendant Concordia, transferred the RAZORBACK trademark, which was the sole property of Abbott, to a third party without the knowledge of Abbott; and (v) in conjunction with Defendant Concordia, acquired the registered trade dress for the guitar design known as the Dime3 in its own name, without Abbott's knowledge and without recognizing Abbott as a joint owner.

62.     As a direct and proximate cause and result of Defendant Dean Guitars' breach, Plaintiff has been damaged in an amount according to proof and in excess of the jurisdictional minimum of this Court.

WHEREFORE, Plaintiff requests this Court to enter judgment in its favor and award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT II

**(Against all Defendants)**

**Unfair Competition, False Endorsement, False Association, and False Designation of Origin Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A)**

63.     Plaintiff repeats and re-alleges each allegation set forth above as if set forth fully herein.

64.     This Count is a claim for federal unfair competition, false endorsement, false association and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

65.     Abbott was a world-famous musician who had great success.  Given his success, he benefits from instant name recognition.  His image, name and persona is immediately recognizable and associated in the mind of the public.

66.     Defendant Dean Guitars' advertisements with the use of Abbott's name was and is in interstate commerce and done specifically to increase sales of Defendant Dean Guitars' musical instruments and advance Dean Guitars' other interests.

67.     Defendants wrongful conduct, includes unlawfully exploiting Abbott's name and likeness, the unauthorized and fraudulent trademark registrations for the trademark Razorback and the Razorback guitars design, the illegal and fraudulent ownership of US Trademark Registration Nos. 3,562,989 and

3,644,934 for the Razorback guitar design and trademark and the acquisition of US Trademark Registration No. 2,588,629 in its own name, which conduct was all done with the intent of confusing and misleading consumers into believing that Defendant Dean Guitars and its products are endorsed by or associated with Abbott or that Defendant Dean Guitars owned the rights to certain intellectual property that it did not rightfully own.

68.     This unauthorized use constitutes unfair competition, false designation of origin and false and misleading representation of fact by Defendants that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendant Dean Guitars with Abbott, or as to the origin, sponsorship, or approval of Defendant Dean Guitars' goods, services, or commercial activities by Abbott, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

69.     Defendants knew or should have known that its unauthorized use of Abbott's name and their conduct was likely to cause confusion or mistake by the public regarding whether Abbott endorsed, is affiliated, connected to, or associated with Defendants.

70.     Due to Defendants' unauthorized use of Abbott's name and false claims of ownership to Plaintiff's intellectual property, Plaintiff has and will continue to suffer damages.

71.     On information and belief, Defendants have or will profit by its wrongful conduct and activities.

72.     On information and belief, Defendants' conduct have and continue to be intentional, willful, and with full knowledge of the violation of Plaintiff's rights.

73.     Defendants are causing and, unless enjoined by the Court, will continue to cause Plaintiff irreparable harm for which it has no adequate remedy at law.

74.     Plaintiff is entitled to its attorneys' fees and full costs pursuant to 15 U.S.C. §1117 and prejudgment interest according to law.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor, preliminary and permanently enjoining Defendants' unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper, including declaratory relief that Plaintiff is the rightful owner of US Trademark Registration Nos. 3,562,989 and 3,644,934 for the Razorback guitar design and trademark and its ownership rights in US Trademark Registration No. 2,588,629.

## COUNT III

### (Against Defendant Dean Guitars)

### False Advertising Under Section 43(a)(1)(B) of the Lanham Act,

### 15 U.S.C. §1125(a)(1)(B)

75.     Plaintiff repeats and re-alleges each allegation set forth above as if set forth fully herein.

76.     This Count is a claim for false and deceptive advertising under 15 U.S.C. §1125(a)(1)(B).

78.     Defendant Dean Guitars' depiction of Abbott and claims that he endorses Defendant Dean Guitars on its website and in other mediums constitute commercial advertising and/or commercial promotion.

79.     The statements by Defendant Dean Guitars' on its website and in other mediums contains false and misleading statements about the nature, characteristics and/or origin of the products that Defendant Dean Guitars has available for sale.

80.     The statements by Defendant Dean Guitars' on its website and in other mediums were placed into interstate commerce.

81.     The statements by Defendant Dean Guitars' on its website and in other mediums directly and/or proximately caused and/or is likely to cause Plaintiff to suffer harm and damages, as well as irreparable diminution to Abbott's reputation, fame and goodwill.

82.    Upon information and belief, Defendant Dean Guitars' acts and conduct complaint of herein constitute false advertising in violation of U.S.C. §1125(a)(1)(B).

83.    Plaintiff has suffered and will continue to suffer, irreparable harm from Defendant Dean Guitars' acts and conduct complained of herein.  Plaintiff has not adequate remedy at law.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor, preliminary and permanently enjoining Defendants' unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT IV
### (Against all Defendants)
### Violation of Florida's Unfair and Deceptive
### Trade Practices Act, § 501.201 et seq. ("FDUTPA")

84.    Plaintiff repeats and re-alleges each allegation set forth above as if set forth fully herein.

85.    Plaintiff brings this Count under Section 501.201 *et seq*., Florida Statutes.

86.    Defendants wrongful conduct, includes unlawfully exploiting Abbott's name and likeness, the unauthorized and fraudulent trademark

registrations for the trademark Razorback and the Razorback guitars design, the illegal and fraudulent ownership of US Trademark Registration Nos. 3,562,989 and 3,644,934 for the Razorback guitar design and trademark and the acquisition of US Trademark Registration No. 2,588,629 in its own name, which conduct was all done with the intent of confusing and misleading consumers into believing that Defendant Dean Guitars and its products are endorsed by or associated with Abbott or that Defendant Dean Guitars owned the rights to certain intellectual property that it did not rightfully own.

87.    Defendants wrongful conduct constitutes deceptive trade practices under FDUTPA.

88.    Defendants' wrongful conduct is made even more reprehensible because of Defendants' secret misappropriation of intellectual properties and trademarks belonging to Abbott and Plaintiff.

89.    On information and belief, Defendants' conduct has and continues to be intentional, willful, and with full knowledge of the violation of Plaintiff's rights.

90.    Plaintiff has suffered, and will continue to suffer, irreparable harm and damages as a direct and proximate result of Defendants' bad acts and the conduct complained of herein.

91.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor, preliminary and permanently enjoining Defendants' unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT V

### (Against Defendant Dean Guitars)

### Violation of Florida Statutory Right of Publicity, FL. ST. § 540.08

92.     Plaintiff repeats and re-alleges each allegation set forth above as if set forth fully herein.

93.     In violation of Plaintiff's rights and consent, Defendant Dean Guitars has knowingly caused the advertisement and sale of product, which prominently contains Abbott's name, in interstate commerce, including in this judicial district.

94.     Such use of Abbott's name by Defendant Dean Guitars was for the purposes of advertising, selling and soliciting the purchase of Defendant's products, merchandise, and goods and services.

95.     Defendant's conduct is in direct violation of Florida Statute Section 504.08, since such acts were without the consent of Plaintiff.

96.     There was, and is, a direct connection between the use and exploitation of Abbott's name and the commercial purposes associated with the

promotion of Defendant Dean Guitars and its products, merchandise, goods and services.

97.  As a proximate result of the misappropriation of Abbott's name, Plaintiff has been and will continue to be harmed.

98.  The use of Abbott's name in the advertisements implies that Abbott and Plaintiff has endorsed Defendant Dean Guitars and/or its products, merchandise, and goods and services.

99.   As a proximate result of Defendant Dean Guitars' actions, Plaintiff has suffered actual damages in an amount exceeding the jurisdictional limit of this Court and in an amount to be proven at trial.

100.   Pursuant to Florida Statute Section 504.08, Plaintiff is also entitled to punitive or exemplary damages against Defendant Dean Guitars' from the advertisements and sale of product, resulting from the unauthorized exploitation of Abbott's name, in an amount to be proven at trial.

101.   Defendant Dean Guitars' conduct was and is willful, malicious and oppressive; it acted in conscious disregard of Plaintiff's rights, thereby subjecting Plaintiff to unjust hardship.  Defendant knew that it was required approval for its continued use of Abbott's name. Accordingly, Plaintiff seeks an award of punitive damages in an amount to be determined at trial, for Defendant's wrongdoing and to deter it from similar wrongdoing in the future.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor, preliminary and permanently enjoining Defendants' unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT VI
### (Against all Defendants)
### Unfair Competition Under Florida Common Law

102.    Plaintiff repeats and re-alleges each allegation set forth above as if set forth fully herein.

103.    Plaintiff brings this Count under Florida Common Law.

104.    Plaintiff has the exclusive right in and is the owner of the properties and all intellectual property related to the estate of Abbott, and in all rights of publicity to Abbott's name and likeness, including, but not limited to, the Dean From Hell Artwork.

105.    Defendants wrongful conduct, includes unlawfully exploiting Abbott's name and likeness, the unauthorized and fraudulent trademark registrations for the trademark Razorback and the Razorback guitars design, the illegal and fraudulent ownership of US Trademark Registration Nos. 3,562,989 and 3,644,934 for the Razorback guitar design and trademark and the acquisition of US Trademark Registration No. 2,588,629 in its own name, which conduct was all

30

done with the intent of confusing and misleading consumers into believing that Defendant Dean Guitars and its products are endorsed by or associated with Abbott or that Defendant Dean Guitars owned the rights to certain intellectual property that it did not rightfully own.

106.   Defendants' conduct has and continues to be intentional, willful, and with full knowledge of the violation of Plaintiff's rights.

107.   Plaintiff has suffered, and will continue to suffer, irreparable harm as a direct and proximate result of Defendants' wrongful conduct.

108.   Plaintiff has no adequate remedy at all.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor, preliminary and permanently enjoining Defendants' unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT VII
### (Against all Defendants)
### Fraud

109.   Plaintiff repeats and re-alleges each allegation set forth above as if set forth fully herein.

110.   Defendants wrongful conduct includes the unauthorized and fraudulent trademark registrations for the trademark Razorback and the Razorback

guitars design, the illegal and fraudulent ownership of US Trademark Registration Nos. 3,562,989 and 3,644,934 for the Razorback guitar design and trademark, the illegal and fraudulent transfer of rights in Reg. No. 3,644,934 to a third party and the acquisition of US Trademark Registration No. 2,588,629 solely in its own name. Upon information and belief, Defendants made such acts without any intent to compensate Plaintiff.

111.   In particular, in connection with the Endorsement Agreement, Dean Guitars, expressly disclaimed all rights to the trademark Razorback and the Razorback guitars design, and despite this express acknowledgment and without Plaintiff's knowledge, had its agent, Defendant Concordia, fraudulently represent to be the owner of the trademark Razorback and the Razorback guitars design, and then assign the Razorback trademark to a third party without the consent of Abbott's estate.

112.   Further, pursuant to the Endorsement Agreement, the acquisition of US Trademark Registration No. 2,588,629 should have been a jointly owned asset. Defendants fraudulently acquired the asset in the name of Defendant Concordia, without the knowledge of Abbott.

113.   Plaintiff owed a duty to disclose any and all material facts affecting Plaintiff's intellectual property rights to Plaintiff.

32

114.   Plaintiff reasonably, justifiably, and detrimentally relied on Defendants' misrepresentations and fraudulent omissions.

115.   Moreover, Defendants' fraudulent actions, conscious and reckless disregard of the consequences of their actions, and its intent to injure Plaintiff were willful, wanton, malicious or oppressive so as to warrant punitive damages against them to punish or deter them from similar future conduct.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor, preliminary and permanently enjoining Defendants' unlawful conduct, award damages and/or penalties, including punitive damages and attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper, including declaratory relief that Plaintiff is the rightful owner of US Trademark Registration Nos. 3,562,989 and 3,644,934 for the Razorback guitar design and trademark and its ownership rights in US Trademark Registration No. 2,588,629.

<u>**COUNT VII**</u>

**(Against Defendant Dean Guitars)**

**Quantum Meruit**

116.   Plaintiff repeats and re-alleges each allegation set forth above as if set forth fully herein.

117.   This Count is a claim for Quantum Meruit.

118.   Under the Endorsement Agreement and in its relationship with

Abbott, the Estate of Abbott and Plaintiff, Defendant Dean Guitars had certain duties and obligations.  More specifically, Defendant Dean Guitars had the duty to: (i) be truthful and informative to Plaintiff; (ii) to disclose all material facts that could reasonably influence Defendant Dean Guitars use of Abbott related intellectual property and the value thereof, including but not limited to the Dean From Hell Artwork, the Stealth trademark, the Stealth guitar design, the Razorback trademark and Razorback guitar design ("Abbott IP"); and (iii) fairly represent the use of Abbott's intellectual property and the value thereof, including but not limited to Abbott IP.

119.   Defendant Dean Guitars has unduly benefitted from the use and exploitation of the Abbott IP and the value thereof.  Plaintiff has been damaged by Defendant Dean Guitar's use of Defendant's IP during the term of the Endorsement Agreement without compensation for the value and use of the Abbott IP.

WHEREFORE, Plaintiff requests this Court to enter judgment in its favor and award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## COUNT IX

### (Against Defendant Dean Guitars)

### Accounting

120.   Plaintiff repeats and re-alleges each allegation set forth above as if set forth fully herein.

121.   This Count is a claim for accounting of payments by Defendant Dean Guitars to Plaintiff under the Endorsement Agreement.

122.   As alleged herein, Abbott, Abbott's estate or Plaintiff, on the one hand, and Defendant Dean Guitars, on the other hand, were contracting parties under the Endorsement Agreement.  The length of the Endorsement Agreement, and the multitude of products sold and payment streams under the Endorsement Agreement are complex, and the income therefrom due to Plaintiff cannot be readily ascertained because of Defendant Dean Guitars wrongful conduct and breaches of the Endorsement Agreement.

123.   A full and complete accounting is necessary and appropriate under the circumstances, in order to determine the nature and extent of Defendant Dean Guitars' wrongdoing in this matter.  As a result of Defendant Dean Guitars' wrongdoing and breaches of the Endorsement Agreement, there are damages and amounts of money due and owing to Plaintiff from Defendant Dean Guitars that remains unknown and unascertainable absent an accounting.

WHEREFORE, Plaintiff requests this Court orders an accounting by Defendant Dean Guitars and/or under the Endorsement agreement, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted,

DATED:  August 16, 2021          By:  /s/ Edward F. O'Connor

Edward F. O'Connor
Florida Bar No. 132223

Edward F. O'Connor
efo@avynolaw.com
Jennifer Hamilton
California Bar No. 220439
jhh@avynolaw.com
Jan Sundberg
California Bar No. 169186
jas@avynolaw.com
**AVYNO LAW P.C.**
6345 Balboa Blvd., Bldg. 1, Suite 208
Encino, CA 91316
Phone:  818-654-8840
Fax:     818-332-4205
*Attorneys for Plaintiff*
*In Dime We Trust, RLT*