## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**IN DIME WE TRUST, RLT, a Texas Revocable Living Trust, by and through RITA HANEY, Trustee,**

      **Plaintiff,**

**v.**                                 **Case No.: 8:21-cv-1967-SDM-AAS**

**ARMADILLO DISTRIBUTION ENTERPRISES, INC., Florida corporation, D/B/A DEAN GUITARS; CONCORDIA INVESTMENT PARTNERS, LLC, a Florida limited liability company,**

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Defendants Armadillo Distribution Enterprises, Inc. d/b/a Dean Guitars (Dean Guitars) and Concordia Investment Partners, LLC (Concordia) (collectively, the defendants) move to dismiss Plaintiff In Dime We Trust, RLT's (the Trust) amended complaint. (Doc. 33). The Trust opposes the motion. (Doc. 50).  Upon consideration of the parties' arguments in the papers and at oral argument (Doc. 128), this report **RECOMMENDS** the defendants' motion be **GRANTED**. The Trust should be permitted an opportunity to cure the amended complaint's overall pleading deficiencies and attempt to re-plead all

1

claims except for its claims for right of publicity (count VI) and unfair competition (count VII).

## I.   BACKGROUND[1]

The Trust asserts ten claims against Dean Guitars and four claims against Concordia. (Doc. 29). The Trust is the alleged assignee and owner of all properties and intellectual properties from the estate of Darrell "Dimebag" Abbott (Dime)—former lead guitarist of the band Pantera. (*Id.*). Dean Guitars manufactures, distributes, and sells musical instruments and other products. (Doc. 29, ¶ 2). Dean Guitars and Concordia have common ownership and are affiliated companies. (Doc. 29, ¶ 4).

In November 2004, Dean Guitars and Dime entered into an endorsement agreement (the 2004 Agreement) under which Dime would endorse a signature line of guitars with his name, image, and likeness and Dean Guitars would manufacture, distribute, advertise, promote, and sell those guitars. (Doc. 29, ¶ 14). The 2004 Agreement prohibited assignments, transfers, and sublicenses without the "express prior written consent" of the other party, except that Dime may assign the "financial benefits" of the contract. (Doc. 33, Ex A; Doc. 53, Ex.

---

[1] Other than addressing factual attacks on standing, the court must accept the factual allegations in the amended complaint as true and construe them in the light most favorable to the Trust. *Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1354 (11th Cir. 2021).

A, ¶ 27).[2]  A month later, Dime was tragically killed while performing. (Doc. 29, ¶ 18).

Dime was survived by his brother Vincent Abbott and his father Jerry Abbott. (Doc. 29, ¶ 20). Vincent Abbott administered Dime's estate. (*Id.*). Almost ten years after the 2004 Agreement, in June 2014, Dean Guitars and Dime's estate (through Vincent Abbott) signed a reinstated endorsement agreement (the 2014 Agreement) (together with the 2004 Agreement, the Agreements).[3] (Doc. 29, ¶ 21; Doc. 33, Ex. B; Doc. 53, Ex. B, ¶ 27). Like the 2004 Agreement, the 2014 Agreement authorized Dean Guitars to use Dime's name, image, and likeness in the manufacturing and sales of guitars. (*Id.*). The 2014 Agreement also prohibited assignments, transfers, and sublicenses without the "express prior written consent" of the other party, except that Dime's estate had the right to assign the "financial benefits" of the contract. (Doc. 33, Ex. B; Doc. 53, Ex. B, ¶ 27). Vincent Abbott died in June 2018 and

---

[2] "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiffs claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). The Agreements are central to the Trust's claims and the defendants do not dispute their authenticity. Thus, the court may consider the Agreements without converting the defendants' motion to dismiss into a motion for summary judgment.

[3] The amended complaint states the 2014 Agreement was entered in April 2014, but the 2014 Agreement is dated June 2014. (*See* Doc. 29, ¶ 21; Doc. 53, Ex. B, ¶ 27).

transferred his interest in Dime's estate, including all intellectual property rights, to Rita Haney by will. (Doc. 29, ¶ 26).

In May 2020, Jerry Abbott and Ms. Haney transferred all assets of Dime's estate to the Trust, with Ms. Haney as the trustee. (Doc. 29, ¶ 26). The transfer included:

> [A]ny and all royalties, licensing fees, and all other income derived from legacy assets, including all ownership of any legacy assets of Darrell Abbott and/or his estate, including without limitation all income from said legacy assets and music and licensing of images and/or instruments or historical physical assets. Further, the assignment to Plaintiff specifically included all royalties and/or licensing fees from the sale or marketing of the music, images, photographs, videos, copyrights, trademarks or musical equipment belonging to Darrell Lance Abbott or his estate, including, without limitation, the royalties and fees from "Armadillo Enterprises, dba Dean Guitars."

(*Id.*).

On August 16, 2021, the Trust sued the defendants. (Doc. 1). The Trust's amended complaint asserts: Breach of Written Agreement against Dean Guitars (count I); Copyright Infringement against Dean Guitars (count II); Unfair Competition, False Endorsement, False Association, and False Designation of Origin under Section 43(a)(1)(A) of the Lanham Act against the defendants (count III); False Advertising under Section 43(a)(1)(B) of the Lanham Act against Dean Guitars (count IV); Violation of Florida's Unfair and Deceptive Trade Practices Act, § 501.201, et seq. (FDUTPA) against the

4

defendants (count V); Violation of the Right of Publicity, FLA. STAT. § 540.08, against Dean Guitars (count VI); Common Law Unfair Competition against the defendants (count VII); Fraud against the defendants (count VIII); Quantum Meruit against Dean Guitars (count IX); and Accounting against Dean Guitars (count X). (Doc. 29).

## II.   ANALYSIS

The defendants request dismissal of the Trust's amended complaint on four grounds: (1) the Trust lacks standing to raise contract and trademark related claims (counts I, III, IV, VII, VIII, IX, and X) under Federal Rule of Civil Procedure 12(b)(1); (2) the Trust is not the real party in interest; (3) the amended complaint is an impermissible shotgun pleading; and (4) the amended complaint fails to state a plausible claim under Fed. R. Civ. P. 12(b)(6). (Doc. 33).

### A.   Preliminary Considerations

#### 1.   Article III Standing

In federal court the plaintiff must establish Article III standing. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992). Because lack of standing deprives the court of its constitutional power to adjudicate the parties' dispute, a district court must confirm a party's standing before proceeding to consider the merits

of the claims. *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (citations omitted).

Establishing standing requires three elements: an injury-in-fact (an invasion of an interest that is both concrete and particularized, and actual or imminent), a causal connection between the plaintiff's injury and the challenged action of the defendant, and a likelihood (not mere speculation) that a favorable judgment will redress the plaintiff's injury. *Gardner*, supra, at 1338 (quoting *Lujan,* 504 U.S. at 560–61). If a plaintiff lacks standing, the dispute is not within the subject matter jurisdiction of the court. *Doe v. Pryor*, 344 F.3d 1282, 1284 (11th Cir. 2003).

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). When a defendant factually attacks a plaintiff's standing at the motion to dismiss stage, a court can "consider extrinsic evidence such as deposition testimony and affidavits" and is not "constrained to view [the facts] in the light most favorable to the plaintiff." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013) (citation and internal quotation marks omitted) (emphasis added).  If a factual attack on a plaintiff's standing is "inextricably intertwined" with an element of the cause of action, "the proper

6

course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Lawrence v. Dunbar*, 919 F. 2d 1525, 1529 (11th Cir. 1990) (internal citation and quotation omitted).

The defendants argue the Trust lacks standing because it does not have a legally cognizable interest in the Agreements or Dime's intellectual property and publicity rights. (Doc. 33, pp. 7–12). In response, the Trust contends it has standing because it owns Dime's estate's assets, including the assignment of financial benefits under the Agreements as well as intellectual property rights transferred to the Trust.[4] (Doc. 50, pp. 2–12).

The Trust's amended complaint alleges "[the Trust] is the assignee and owner of all properties and intellectual properties related to the estate of [Dime]." (Doc. 29, ¶ 1). Dean Guitars and Dime signed the 2004 Agreement under which Dime agreed to endorse a signature line of guitars designed by Dime and to be manufactured and sold by Dean Guitars. (Doc. 29, ¶ 14). Dean Guitars and Dime's estate (through Vincent Abbott) reinstated the 2004

---

[4] The Trust also argues it is a third-party beneficiary to the Agreements. (Doc. 50, pp. 5–9). A third-party is an intended beneficiary "only if a direct and primary object of the contracting parties was to confer a benefit on the third party." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005). This intent "must be specific and must be clearly expressed in the contract in order to endow the third-party beneficiary with a legally enforceable right." *Id.* No such intent is alleged or expressed in the Agreements. Thus, this argument fails.

Agreement with the 2014 Agreement.[5] (Doc. 29, ¶ 21). Although the 2014 Agreement prohibited assignments and transfers without Dean Guitar's "express prior written consent," Dime's estate could assign the "financial benefits" of the 2014 Agreement. (Doc. 33, Ex. B; Doc. 53, Ex. B, ¶ 27).

When Vincent Abbott died in 2018, he conveyed his interest in Dime's estate to Ms. Haney by will. (Doc. 29, ¶ 26). In May 2020, Ms. Haney and Jerry Abbott (Dime's father and sole remaining heir) transferred their interest in Dime's estate to the Trust, including financial benefits under the 2014 Agreement and Dime's intellectual property interests. (*Id.*).

These facts sufficiently support the Trust's standing to pursue the financial benefits agreed to under the 2014 Agreement. In addition, the facts sufficiently support Jerry Abbott's and Ms. Haney's transfer to the Trust included Dime's intellectual properties. (*Id.*). Thus, this report recommends concluding the Trust has standing.

### 2. Real Party in Interest

Federal Rule of Civil Procedure 17(a)(1) provides "every action must be prosecuted in the name of the real party in interest." Under Rule 17, a "court may not dismiss an action for failure to prosecute in the name of the real party

---

[5] Dime was survived by Jerry Abbott and Vincent Abbott. (Doc. 29, ¶ 20). As Dime's only living heirs, Vincent Abbott and Jerry Abbott, were, under applicable state law, the beneficiaries to Dime's estate. *See* Texas Estate Code Sec. 201.001(d).

in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).

The dual concepts of a plaintiff's standing to sue and its status as the real party are "two distinct issues with separate considerations." *Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1358 (11th Cir. 2021) (internal quotation and citation omitted). While standing is "a constitutional requirement that asks whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues," the real-party-in-interest inquiry asks whether a party: (1) is "the party who, by the substantive law, has the right sought to be enforced;" and (2) "possesses a significant interest in the action to entitle him to be heard on the merits." *Id.* (internal citations and quotation marks omitted).

Because the Federal Rules of Civil Procedure "do not contain a specific procedure for raising an objection that [the] plaintiff is not the real party in interest . . . a motion to dismiss under Rule 12(b)(6) is one proper method of bringing this issue to the Court." *Pro Premium Fin. Co., Inc. v. US Premium Fin. Serv. Co., LLC*, No. 0:16-CV-60009-UU, 2016 WL 6248599, at *5 (S.D. Fla. Oct. 26, 2016) (*citing Siemens USA Holdings, Inc. v. United States*, 960 F. Supp. 2d 221, 223 (D.D.C. 2013)); *Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992) ("A real-party-in-interest defense can be raised as a Rule 12(b)(6) motion,

stating, in effect, that because the plaintiff is not the person who should be bringing the suit, the plaintiff has 'fail[ed] to state a claim upon which relief can be granted.'"); *see also Trondheim Cap. Partners, LP v. Life Ins. Co. of Alabama*, 505 F. Supp. 3d 1213, 1225 (N.D. Ala. 2020) (same).

The Trust is suing on its own behalf and possesses this legal right through the transfer of the entirety of Dime's estate to the Trust. *See Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666, 670 (11th Cir. 1991), *abrogated on other grounds by Saxton v. ACF Indus., Inc.*, 254 F.3d 959 (11th Cir. 2001) (en banc) (holding that whether a plaintiff may sue on behalf of an estate "is not a question of standing" but of "whether [the plaintiff] has the capacity to bring [the] action on behalf of the estate"). Thus, the Trust has a significant interest in pursuing this action.

This report recommends concluding the Trust is the real party in interest.

### B.    Overall Pleading Defect – Shotgun Pleading

A shotgun pleading violates Fed. R. Civ. P. 8(a)(2) or 10(b), or both. Shotgun pleadings fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The *Weiland*

court identified four categories of impermissible shotgun pleadings, two of which apply to the Trust's amended complaint. (*See* Doc. 33, pp. 13–15).

First, the Trust's amended complaint is an impermissible shotgun pleading because each count incorporates the same set of facts. The most common shotgun pleading identified in *Weiland* "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321. The Trust's complaint violates this prohibition as every count states in its first paragraph: "Plaintiff repeats and re-alleges each allegation set forth above as if set forth fully herein." (*See* Doc. 29, ¶¶ 59, 64, 72, 84, 92, 100, 119, 117, 124, 128). For this reason alone, the Trust's amended complaint is an improper shotgun pleading and should be dismissed on this basis alone.[6] *See Weiland*,

---

[6] In the Eleventh Circuit, shotgun pleadings of this sort are "altogether unacceptable." *Cramer v. Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997); *see also Cook v. Randolph Cnty.*, 573 F.3d 1143, 1151 (11th Cir. 2009) ("We have had much to say about shotgun pleadings, none of which is favorable.") (collecting cases). "Shotgun pleadings, whether filed by plaintiff or defendant, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Cramer*, 117 F.3d at 1263; *see also Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) ("Besides violating the rules, shotgun pleadings also 'waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts.'").

at 1321; *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).

Second, the Trust's amended complaint improperly combines multiple causes of action in a single count. *See Weiland*, 792 F.3d at 1322–23 ("[This] type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief."). For example, count VIII (fraud) is a combination of separate theories based on the ownership, acquisition via assignment, and transfer to a third party of various trademark registrations. (*See* Doc. 29, ¶¶ 117–23). Count VIII further improperly asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321. Count III also confusingly attempts to merge various claims under the Lanham Act. (*See* Doc. 29, ¶¶ 72–83).

The Trust's amended complaint is an impermissible shotgun pleading. Thus, the court recommends the defendants' motion to dismiss be granted with leave for the Trust to attempt to cure this overall pleading defect.

## C.   **Claim-Specific Deficiencies**

Fed. R. Civ. P. 8(a) requires "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule

8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). When reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (*citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, No. 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009).

Ultimately, this report concludes the Trust should be given a second attempt to state a claim for eight of the amended complaint's ten counts. This report outlines many deficiencies for those eight counts. Whether those deficiencies are capable of being cured is unclear from the amended complaint's allegations, but the Trust should be permitted another attempt.

### 1.    Count I – Breach of Contract against Dean Guitars

The Trust's amended complaint alleges a claim for common law breach of contract and asserts breaches of both the 2004 Agreement and the 2014 Agreement. (*See* Doc. 29, ¶¶ 59–63). To the extent the Trust is attempting to bring a claim for a breach of the 2004 Agreement (which the amended complaint repeatedly alleges was "reinstated and amended" by the 2014 Agreement), that claim is barred by Florida's five-year statute of limitations for a written contract. FLA. STAT. § 95.11(2)(b). Therefore, this report recommends any claimed breach of the 2004 Agreement be dismissed with prejudice. The recommended dismissal of the breach of contract claim for the 2014 Agreement, however, should permit the Trust an opportunity to cure its pleading defects and attempt to allege a plausible claim.

### 2.    Count II – Copyright Infringement

The Trust alleges it is the "owner of the Dean From Hell artwork" and claims copyright infringement against Dean Guitars. (Doc. 29, ¶ 65). The defendants allege this claim of ownership is contradicted by the copyright registration that identifies the copyright owner as Dime's estate, not the Trust. But, construing the allegations in the light most favorable to the Trust, Dime's estate transferred its intellectual property rights to the Trust. (Doc. 29, ¶ 26).

14

Thus, the Trust should be afforded to an opportunity to cure its pleading defects and allege this claim.

### 3. Count III − Unfair Competition, False Endorsement, False Association, and False Designation of Origin under Section 43(a) of the Lanham Act

The Trust confusingly attempts to merge various claims under the Lanham Act in count III. (*See* Doc. 25, ¶¶ 73–83). The undersigned is unable to discern which allegation supports which claim and, therefore, is unable to determine whether the Trust can plausibly state a claim for a Lanham Act violation. In addition, the allegations do not distinguish between the defendants. The Trust should be afforded another chance to allege its Lanham Act claims more clearly, if it can, so that the plausibility of the claims may be determined.

### 4. Count IV − False Advertising under Section 43(a) of the Lanham Act

"To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014). To show that a defendant's statements caused the injury, a plaintiff must allege "'(1) the . . . statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the

15

deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [the plaintiff] has been, or likely will be, injured as a result of the false or misleading statement.'" *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015) (alteration in original) (quoting *Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012)).

The Trust's false advertising claim refers to "statements" but the Trust does not identify any false or misleading statements by Dean Guitars. (Doc. 29, ¶¶ 86–87). Other than reciting the elements of a false advertising claim, the Trust does not state whether the alleged false advertising deceived or confused consumers. *See Ameritox Ltd. v. Millenium Labs.*, Inc, No. 8:11-cv-775-T-24-TBM, 2012 WL 33155, at *3 (M.D. Fla. Jan. 6, 2012) (dismissing false advertising claim without prejudice where complaint failed to allege that the acts were likely to deceive and confuse the public). The Trust's amended complaint also fails to plead materiality as is required by the statute.

The Trust should be afforded another opportunity to cure these claim-specific pleading deficiencies, if possible.

16

### 5.    Count V – Violation of FDUPTA

A claim under FDUTPA requires "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Sol. Z v. Alma Lasers, Inc.*, No. 11-CV-21396-CIV, 2012 WL 13012765, at *3 (S.D. Fla. Jan. 25, 2012). The Trust has alleged no deceptive act or unfair practice. Instead, the Trust alleges the defendants are "unlawfully [exploiting] [Dime's] name and likeness," and using "unauthorized and fraudulent trademark registrations," which the Trust claims were committed "with the intent of confusing and misleading consumers," and "constitute[] deceptive trade practices." (Doc. 29, ¶¶ 94–95). These conclusory assertions fail to set forth "precisely . . . the manner in which [these acts] misled consumers." *See Sol. Z*, 2012 WL 13012765, at *3.

A FDUTPA claim also requires a plaintiff to allege actual damages or "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021) (quotations omitted). The Trust's amended complaint fails to do so.

The Trust should be afforded another opportunity to cure these claim-specific pleading deficiencies, if possible. Any amended FDUTPA claim must

also put the defendants on notice as to what is being alleged separately against each defendant.

### 6.    Count VI – Right of Publicity

Section 540.08(c), Fla Stat., limits a plaintiff, when a rights holder is deceased, to "any person, firm or corporation authorized in writing to license the commercial use of her or his name or likeness, or if no person, firm or corporation is so authorized, then by any one from among a class composed of her or his surviving spouse and surviving children." *Weinstein Design Group, Inc. v. Fielder*, 884 So. 2d 990, 1000 n.2 (Fla. 4th DCA 2004) ("The statute allows either oral or written permission from the person whose name is used, but in a case where a third party gives consent on behalf of the person whose name is to be used, the statute requires a written authorization from the person whose name is used to the consenting third party.") (*citing* § 540.08(1)(b), FLA. STAT).

The Trust does not plead written authorization from Dime or any status as a surviving spouse or children. Based on the amended complaint's factual allegations, the Trust cannot plead what is required by the statute. Consequently, because amendment of this claim would be futile, this report recommends count VI be dismissed *with* prejudice.

### 7.    Count VII − Unfair Competition

Common law unfair competition under "'Florida law requires that [plaintiff] establish deceptive or fraudulent conduct of a *competitor* and likelihood of consumer confusion.'" *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1493 (11th Cir. 1990) (alteration in original) (emphasis added) (*quoting Donald Frederick Evans and Assoc. v. Continental Homes, Inc.*, 785 F.2d 897, 914 (11th Cir. 1986)).

The factual allegations do not support the required competition elements. Consequently, because amendment of this claim would be futile, this report recommends count VII be dismissed *with* prejudice.

### 8.    Count VIII − Fraud

The elements of Florida common law fraud are:

> (1) the defendant made a false statement or omission of material fact; (2) the defendant knew the statement was false; (3) the statement was made for the purpose of inducing plaintiff to rely on it; (4) plaintiff's reliance was reasonable; and (5) plaintiff suffered damages.

*Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*, No. 16-80056-CIV-WPD, 2016 WL 9413421, at *3 (S.D. Fla. June 29, 2016); *see Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985).

Common law fraud is subject to Fed. R. Civ. P. 9(b)'s heightened pleading requirements. Under Rule 9(b), a plaintiff must allege (a) the precise

statements, documents, or misrepresentations made; (b) the time, place, and person responsible for the statement; (c) the content and manner in which these statements misled the plaintiffs; and (d) what the defendants gained by the alleged fraud. *Broadway* Gate, 2016 WL 9413421, at *19 (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)). The Trust does not allege any of this required information.

Also, the Trust does not allege, with particularity or otherwise, who did the misleading or how the Trust was misled. Under 15 U.S.C. § 1064(3), a party may petition to cancel a registered mark because the registration was "obtained fraudulently." "To state a claim for fraud [in connection with a federal trademark registration], the challenged statement must be false, must be made with knowledge that it is false, and must be material to the examining attorney's decision to approve the application." *Marrero Enter. of Palm Beach, Inc. v. Estefan Enter., Inc.*, No. 06-81036-CIV, 2008 WL 11412087, at *5 (S.D. Fla. Dec. 16, 2008). The complaint mentions no specific, material, knowingly false statements by any person to an examining attorney.

The Trust's amended complaint contains no allegations to support its fraud claim. Even though successfully pleading a plausible fraud claim appears unlikely, the Trust should be afforded another opportunity to cure these claim-specific pleading deficiencies, if possible. Importantly, to state a claim for fraud

20

against both defendants, the Trust must allege specifically a fraudulent act by each defendant, or else it cannot satisfy Rule 9(b)'s particularity requirement.

### 9.    Count IX – Quantum Meruit

"An action founded on quantum meruit is a common law variety of restitution to enforce an implied promise, otherwise referred to as a 'quasi contract' or a contract implied in law." *Harrison v. Pritchett*, 682 So. 2d 650, 652 (Fla. 1st DCA 1996) (citations omitted). To state a claim for quantum meruit, "a plaintiff must allege (1) the plaintiff conferred a benefit on the defendant, (2) the defendant had knowledge of the benefit, (3) the defendant accepted or retained the benefit conferred, and (4) the circumstances indicate that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Dyer v. Wal-Mart Stores, Inc.*, 535 F. App'x 839, 841–42 (11th Cir. 2013) (*citing Merle Wood & Assocs. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013)); *Alevizos v. John D. & Catherine T. MacArthur Found.*, 764 So. 2d 8, 13 (Fla. 4th DCA 1999)).

The defendants argue the Trust's quantum meruit claim fails because where a contract governs the course of dealing between the parties, a claim for quantum meruit arising from a dispute over that course of dealing cannot exist. (Doc. 33, p. 24). Contrary to the defendants' argument, under Florida law, a party may plead alternative theories of breach of contract and quantum

meruit. *See ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1565–66 (S.D. Fla. 1997*); see also Walton Constr. Co., LLC v. Corus Bank*, No. 4:10-CV-137-SPM-WCS, 2011 WL 2938366, at *5 (N.D. Fla. July 21, 2011) ("it is perfectly permissible under Florida law for a plaintiff to state claims in the alternative for recovery under a contract theory or a quasi-contract theory").

Alternative pleadings are generally allowed where, as here, the defendants have not conceded the plaintiff is entitled to recovery under the contract. If the plaintiff's contractual claim fails, the plaintiff may still have a right to recovery under a quasi-contract theory. *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1321 (S.D. Fla. 2010). The Trust may alternatively plead when it amends its amended complaint.

### 10.   Count X – Accounting

For a common law accounting claim, a party must show (1) a sufficiently complicated transaction and inadequate remedy at law or (2) the existence of a fiduciary relationship. *GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.*, 131 F. Supp. 3d 1291, 1301 (M.D. Fla. 2015). The Trust's amended complaint alleges the length of the Agreements and the products sold under the Agreements demonstrate a complex transaction. (*See* Doc. 29, ¶ 130). These allegations are sufficient to state a claim after the Trust corrects the amended complaint's pleading deficiencies.

## III.   CONCLUSION

Accordingly, it is respectfully **RECOMMENDED:**

(1)    The motion to dismiss (Doc. 33) be **GRANTED** because it is an impermissible shotgun pleading.

(2)    Counts I, II, III, IV, V, VIII, IX, and X be dismissed without prejudice to correct the overall pleading deficiencies and any claim-specific pleading deficiencies identified in this report.

(3)    Counts VI and VII be dismissed with prejudice for failure to state a viable cause of action.

**ENTERED** in Tampa, Florida on August 10, 2022.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to

object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.