UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**IN DIME WE TRUST, RLT, a Texas Revocable Living Trust, by and through RITA HANEY, Trustee,**

    Plaintiff,

v.                                                                Case No.: 8:21-cv-1967-SDM-AAS

**ARMADILLO DISTRIBUTION ENTERPRISES, INC., Florida corporation, D/B/A DEAN GUITARS; CONCORDIA INVESTMENT PARTNERS, LLC, a Florida limited liability company,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, In Dime We Trust, RLT (the Trust) moves for a preliminary injunction against Defendant Armadillo Distribution Enterprises, Inc. d/b/a Dean Guitars (Dean Guitars). (Doc. 46). Dean Guitars opposes the motion. (Doc. 89). Upon consideration of the parties' arguments and the evidence presented at the hearing, it is **RECOMMENDED** that the Trust's motion for preliminary injunction (Doc. 46) be **DENIED**.

## I. Background

Dean Guitars manufactures, distributes, and sells musical instruments and other products. (Doc. 29, ¶ 2). Relevant here, Dean Guitars' collection includes the ML guitar. (Doc. 89-1, ¶¶ 4, 6; Doc. 122, p. 204, ln. 22). Dean Guitars also manufactures and sells two similar guitars—the Stealth guitar and the Razorback guitar. (Doc. 122, p. 104, ln. 25, p. 205, ln. 1). The Stealth and the Razorback guitars have the ML guitar's body design but substitute sharp points and jagged edges. (Doc. 122, p. 204, ln. 1–2).

Dean Guitars, through its intellectual property holding company, Concordia Investment Partners, LLC (Concordia), owns a federal trademark registration (Registration No. 3185157) for the ML guitar body design. (Doc. 89-1, ¶ 16; Doc. 122, p. 207, ln. 21–23). Dean Guitars filed the ML guitar trade dress in 2000, registered it in 2006, and first sold it in 1977. (Doc. 89-1, ¶ 17).

Dean, through Concordia, also obtained and owns a federal trademark registration (Registration No. 3562989) for the Razorback guitar design. (Doc. 89-1, ¶ 18). Dean Guitars filed the Razorback guitar trade dress in 2007, registered it in 2009, and first sold it in 2005. (Doc. 89-1, ¶ 19). Dean Guitars first sold the Stealth guitar in 2007. (Doc. 122, p. 205, ln. 11–14).

Darrell "Dimebag" Abbott (Dime), the late guitarist of the band Pantera,

2

used Dean Guitar's ML guitars. (Doc. 89-1, ¶ 21; Doc. 122, p. 77, ln. 1–5). In November 2004, Dean Guitars and Dime entered into an endorsement agreement (the 2004 Agreement) that authorized Dean Guitars use of Dime's name, image, and likeness in connection with its guitars. (*See* Doc. 110-4). One month later, Dime tragically died while performing. (Doc. 29, ¶ 18). Dime was survived by his brother Vincent Abbott and his father Jerry Abbott, who inherited Dime's estate through intestacy. (Doc. 29, ¶ 20; Doc. 122, p. 51, ln. 7–9). Vincent Abbott was the administrator of Dime's estate. (Doc. 29, ¶ 20).

In June 2014, Dean Guitars and Dime's estate (through Vincent Abbott) entered into a reinstated endorsement agreement (the 2014 Agreement), which authorized Dean Guitars' continued use of Dime's name, image, and likeness in connection with its guitars. (*See* Doc. 110-5). Both the 2004 Agreement and the 2014 Agreements prohibited assignments, transfers, and sublicenses without the express prior written consent of the other party, except assignments of "financial benefits." (Docs. 110-4, ¶ 27, 110-5, ¶ 27).

Vincent Abbot died in June 2018 and his interest in Dime's estate, including intellectual property rights, transferred to Rita Haney by Vincent Abbot's will. (Doc. 122, p. 51, ln. 16–25, p. 52, ln. 1–3; *see* Doc. 110-7). In May 2020, Jerry Abbott and Ms. Haney transferred their interest in the entirety of

3

Dime's estate to the Trust. (Doc. 122, p. 54, ln. 1–14; *see* Docs. 110-8, 110-9, 110-10).

In June 2020, Ms. Haney requested a higher royalty for the Trust. (Doc. 89-1, ¶ 27). Dean Guitars denied Ms. Haney's request. (*Id.*). In June 2021, the Trust sued Dean Guitars in the United States District Court for the Western District of California. (*See* Doc. 89-9). Dean Guitars continued to make monthly royalty payments under the 2014 Agreement to Dime's Estate and then to the Trust. (Doc. 122, p. 94, ln. 12–24). Dean Guitars paid a monthly minimum of $8,333. (*Id.*). The Trust received and accepted these payments and did so until at least May 2022.[1] (Doc. 122, p. 95, ln. 1–2).

The Trust dismissed the California action and filed this action on August 16, 2021. (Doc. 1). Dean Guitars moved to dismiss the Trust's complaint. (Doc. 16). Four months after filing its complaint in this court, the Trust moved for a preliminary injunction. (Doc. 20). On January 3, 2022, the trust filed an amended complaint. (Doc. 29). The undersigned granted the trust's motion to withdraw its motion for preliminary injunction based on the amended complaint. (Doc. 44).

---

[1] Until the Trust filed this action in 2021, the partis continued to operate under the terms of the 2014 Agreement. (Doc. 122, p. 90, ln. 10–19, p. 91, ln. 17–25).

## II.     Procedural History and Motion for Preliminary Injunction

On February 4, 2022, the Trust requested an order preliminarily enjoining Dean Guitars from manufacturing and selling the Stealth and Razorback guitars and guitars carrying Dime-endorsed artwork.[2] (Doc. 46). The undersigned ordered the parties to confer about a limited discovery schedule and directed them to advise of the earliest date for an evidentiary hearing. (Doc. 44). After the parties could not agree on a date for the hearing, the undersigned held a status conference on March 1, 2022. (*See* Docs. 54, 55).

At the March 1, 2022 status conference, the undersigned addressed discovery disputes and scheduled a follow-up status conference for April 1, 2022. (*See* Docs. 60, 61, 62). The undersigned also scheduled an evidentiary hearing on the Trust's motion for preliminary injunction. (*Id.*). At the follow-up status conference, the undersigned again addressed various discovery disputes. (*See* Docs. 69, 70, 71, 72, 73). In addition, the undersigned scheduled another follow-up status conference for April 18, 2022. (Doc. 75). On April 18, 2022, the undersigned addressed additional discovery issues and granted Dean

---

[2] The Trust contends it is the owner of the "Abbott Properties," including: (i) Dime names; (ii) images related to Dime; (iii) "Razorback," "Razorbolt," and "Stealth" names; (iv) those three guitar shapes; and (v) custom artwork and "variants," including "Dean from Hell" (Registration No. VA0002275007). (Doc. 46). It appears the Trust is no longer claiming ownership of the "Razorbolt" guitar.

5

Guitar's request to extend the preliminary injunction hearing to accommodate the necessary discovery. (*See* Doc. 77, 78, 79, 80, 81, 82).

On June 8, 2022, the undersigned finally held an evidentiary hearing on the Trust's motion for preliminary injunction. (Doc. 108). At the hearing, the undersigned admitted exhibits and heard witness testimony. (*Id.*). Because the parties could not complete their closing arguments, the parties' counsel were directed to confer and notify the court of the chosen date for closing argument. (Doc. 114). At the request of the parties, the undersigned considered additional briefing and heard closing argument on July 19, 2022. (Docs. 124, 126, 128).

### III. Legal Standard

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A party seeking a preliminary injunction bears the burden of establishing their entitlement to relief. *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010). Whether to grant or deny a preliminary injunction lies within the sound discretion of the district court and will not be reversed absent an abuse of discretion. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375 (Fed. Cir. 2009). If a party establishes the right to a preliminary injunction, its scope "must be 'narrowly tailored to fit

specific legal violations, because the district court should not impose unnecessary burdens on lawful activity.'" *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1178 (11th Cir. 2002) (quoting *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299 (2d Cir. 1999)).

"A district court may grant injunctive relief if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). The motion should ordinarily be denied if the plaintiff fails to meet its burden as to even one of these prerequisites. *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983).

### IV. Analysis

#### A. Likelihood of Success on the Merits

The Trust's amended complaint asserts these claims: (1) breach of contract (count I); (2) copyright infringement (count II); (3) unfair competition, false endorsement, false association, false designation of origin, and false advertising under the Lanham Act (counts III and IV); (4) violation of Florida's

7

Unfair and Deceptive Trade Practices Act (count V); (5) violation of the right of publicity (count VI); (6) unfair competition (count VII); (7) fraud (count VIII); (8) quantum meruit (count IX); and (9) accounting (count X). (Doc. 29). The undersigned issued a Report and Recommendation recommending dismissal of the Trust's amended complaint, with the opportunity to cure pleading deficiencies and to attempt to re-plead all claims except for the claims for right of publicity (count VI) and unfair competition (count VII). (Doc. 129).

Concerning the Trust's contract-related claims, Ms. Haney agreed Dean Guitars and the Trust continued to operate under the 2014 Agreement after the Trust filed this action. (Doc. 122, p. 90, ln. 10–19, p. 91, ln. 17–25). Dean Guitars continued marketing, selling, and paying royalties for Dean-endorsed guitars. (Doc. 122, p. 213, ln. 6-12). Dean Guitars continued to make monthly contractual payments ($8,333) to Dime's estate, and more recently to the Trust. (Doc. 122, p. 94, ln. 12-24). The Trust continued to accept these contractual payments and did so until at least May 2022.[3] (Doc. 122, p. 95, ln. 1-2). This receipt of contractual payments made under the terms of the 2014 Agreement undermines the Trust's contention that the Agreement naturally terminated in 2017. (*See* Doc. 122, p. 85, ln. 8–11, p. 120, ln. 7–10).

---

[3] Dean Guitars made timely monthly payments for eighteen years. (Doc. 122, p. 213, ln. 15).

As for the Trust's trademark-related claims, Dean Guitars, through Concordia, owns an incontestable registration for the Razorback guitar trade dress. (Doc. 89-1, ¶¶ 18, 19). "Registration establishes a rebuttable presumption that the marks are protectable or 'distinctive.' 15 U.S.C. § 1057(b)." *Welding Servs. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007). The trade dress is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration." 15 U.S.C. §1115. The Trust failed to rebut the presumption of Dean Guitar's trade dress ownership of the Razorback guitar.

Because the design of the Stealth guitar is unregistered, the Trust must put forward evidence of "acquired distinctiveness" to make a threshold showing that the design is protectable. *IT Strategies Group, Inc. v. Allday Consulting Group, L.L.C.*, 975 F. Supp. 2d 1267, 1284 (S.D. Fla. 2013) (denying a motion for preliminary injunction because the plaintiff did not establish distinctiveness of product design trade dress). A protectable design requires evidence of "the nature and extent of advertising and promotion; the efforts of the business to create in the public's mind an association between the mark

9

and the business; and the extent to which the public actually identifies the name with the business." *Nationwide Van Lines, Inc. v. Transworld Movers, Inc.*, 853 F. App'x 604, 606 (11th Cir. 2021). The Trust failed to make this showing.

The Trust continuously asserts Dime "created and owned" the Stealth and Razorback guitar styles. (*See* Doc. 46, pp. 11, 14, 15, 17, 22). However, ownership is established through use in commerce. 15 U.S.C. § 1127 (defining "use in commerce" as when "the goods are sold or transported in commerce"); *Sound Surgical Techs., LLC v. Rubinstein*, 734 F. Supp. 2d 1262, 1274 (M.D. Fla. 2010) (contention that defendant invented the mark is "irrelevant" to question of ownership); *Compton v. Fifth Ave. Ass'n, Inc.*, 7 F. Supp. 2d 1328, 1331 (M.D. Fla. 1998) (holding the plaintiff's contention he first conceived of mark was "irrelevant to his ownership of the mark"); *Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321-22 (11th Cir. 2011) (ownership depends on use, not creation). Dean Guitars first sold the Razorback in 2005, and then sold Stealth in 2007. (Doc. 89-1, ¶ 19; Doc. 122, p. 205, ln. 11–14). Dean Guitars undertook the efforts for prototyping the Razorback and Stealth guitars and mass producing them (Doc. 122, p. 205, ln. 9–25, p. 206, ln. 1–25, p. 207, ln. 1-6). Neither Dime, Dime's estate, nor the Trust made, distributed,

10

or sold Razorback or Stealth guitars.

Considering the evidence presented by the parties and the deficiencies identified in the undersigned's report and recommendation on Dean Guitar's motion to dismiss (*see* Doc. 128), the Trust failed to establish the likelihood of success on the merits.

### B.     Irreparable Injury

"A showing of irreparable injury is the sine qua non of injunctive relief." *Id.* (quotation omitted). The "possibility" of an irreparable injury is insufficient. *See Winter*, 555 U.S. at 22. "Irreparable injury must be neither remote nor speculative, but actual and imminent." *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x 502, 504 (11th Cir. 2007) (quotation omitted).

The Trust alleged natural termination of the 2014 Agreement in 2017. (See Doc. 122, p. 85, ln. 8–11). However, the Trust did not file its California complaint until June 28, 2021. (Doc. 122, p. 85, ln. 8-11, p. 120, ln. 7-10; *see* Doc. 89-9). The Trust did not serve the California complaint and dismissed the action. The Trust then filed this action on August 16, 2021. (Doc. 1). The Trust then waited another four months to move for injunctive relief. (Doc. 20).

This delay undermines the Trust's claim of irreparable harm. *See* Wreal,

*LLC v. Amazon.com. Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm."); *Regions Bank v. Kaplan*, No. 8:16-CV-2867-T-23AAS, 2017 WL 3446914, at *3 (M.D. Fla. Aug. 11, 2017) ("Regions fails to explain persuasively the protracted [eight-month] delay in requesting a preliminary injunction, which delay belies Regions' claim of an imminent and irreparable injury."); *Badillo v. Playboy Entm't Grp., Inc.*, No. 8:04-CV-591-T-30TBM, 2004 WL 1013372, at *2 (M.D. Fla. Apr. 16, 2004) ("Plaintiffs have failed to demonstrate irreparable harm and explain the over nine month delay in filing suit and seeking a preliminary injunction."); *Pippin v. Playboy Entm't Grp.*, Inc., No. 8:02-CV-2329T-30EAJ, 2003 WL 21981990, at *2 (M.D. Fla. July 1, 2003) (denying a motion for preliminary injunction and explaining that "[n]o explanation for this lengthy [six-month] delay has been proffered."); *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1356 (S.D. Fla. 2002) ("The [c]ourt finds that this unexplained [three-month] delay undercuts any sense of urgency and, therefore, [p]laintiff has failed to demonstrate sufficient need for a preliminary injunction*."); see also Chase Manhattan Bank v. Dime Sav. Bank*, 961 F. Supp. 275, 276 (M.D. Fla. 1997) (activity occurring since the previous year was

12

neither irreparable nor imminent).

The Trust alleges irreparable harm in the form of lost commercial and business opportunities. However, Ms. Haney testified she only contacted Fender and Dean Zelinsky[4] to inquire about business opportunities related to Stealth and Razorback guitars. (Doc. 122, p. 96, ln. 2–11, p. 102, ln. 11–21; Doc. 111-1, p. 51, ln. 3–6). Ms. Haney testified Mr. Zelinsky is the only person who could manufacture the Stealth and Razorback guitars, but he is unwilling to manufacture them while lawsuits about the ownership are pending. (Doc. 120, p. 101, ln. 8–16; *see* Doc. 111-26, Ex. 93). Fender advised Ms. Hanley it was "short on factory capacity and can't afford to take anything else on." (Doc. 122, p. 98, ln. 16–25, p. 99, ln. 7; Doc. 111-1, p. 259, ln. 15–23). Thus, the Trust failed to establish an imminent and irreparable harm by lost commercial and business opportunities.

Importantly, Dean Guitar's stopped using Dime's name, image, and likeliness in the manufacture and sale of its guitars. (Doc. 89-1, ¶ 29). Dean Guitars CEO Rubinson testified that, as of June 2021, Dean Guitars stopped

---

[4] Dean Zelinsky is a guitar manufacturer who created the Dean Guitar brand. (Doc. 122, p. 142, ln. 18, p. 144, ln. 20).

13

taking orders or selling any Dime-endorsed products.[5] (Doc. 122, p. 226, ln. 15-17). Mr. Rubinson testified all references to Dime, such as an artist page, banners, guitar models, or anything with Dime's name, likeness, and image, was removed from Dean Guitar's website. (Doc. 122, p. 227, ln. 19–23). Given that Dean Guitars ceased sale of Dime-Endorsed guitars, the Trust failed to establish irreparable harm.

Moreover, the Trust should not receive the "extraordinary and drastic remedy" of a preliminary injunction, *All Care Nursing Serv. v. Bethesda Mem'l*, 887 F.2d 1535, 1537 (11th Cir. 1989), especially when money damages is the alleged remedy. *See Gulf Coast Produce, Inc. v. Am. Growers, Inc.*, No. 07-80633-CIV; 2007 WL 2302109, at *2 (S.D. Fla. Aug. 8, 2007) (citing *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ("[I]t is settled law that when an injury is compensable through money damages there is no irreparable harm.")).

The Trust's failure to establish irreparable harm—the "sine qua non of injunctive relief"—is fatal to its motion. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("the absence of a substantial likelihood of irreparable injury

---

[5] Mr. Rubinson testified that any transaction of a Dime-endorsed product after that time was Dean Guitars fulfilling an order already placed. (Doc. 122, p. 227, ln. 2-12).

14

would, standing alone, make preliminary injunctive relief improper").

### C. Balance of Harm

Although the Trust claims "irreparable injury" absent a preliminary injunction, an injunction would harm significantly Dean Guitars. When considering preliminary relief, "great care must be taken to assure that the power of a court to require or deter action does not result in unwarranted harm." *Ala. v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005). Dean Guitar is the rights holder in trademarks and trade dress of the Razorback guitar and has continuously sold the Stealth guitar in commerce since 2007. (Doc. 89-1, ¶ 19; Doc. 122, p. 205, ln. 11–14). Enjoining Dean Guitars' use of these marks will damage Dean Guitars' reputation, client obligations, and revenue. (Doc. 122, p. 234, ln. 7–21, p. 235, ln. 2–20) (Mr. Rubinson testified the "cost would be pretty massive reputationally" from a preliminary injunction). On the other hand, the Trust's alleged harm is speculative harm as there is no proof of a lost business opportunity and Dean Guitars ended its sale of Dean-endorsed guitars. Thus, the balance of harms weighs in favor of Dean Guitars. *Vraiment Hosp., LLC v. Binkowski*, No. 8:11-cv-1240, 2012 WL 1493737, at *15 (M.D. Fla. Mar. 19, 2012) (denying injunction where plaintiff's alleged harms were "too speculative" but injunction

15

"would result in concrete harm to the defendants").

### D.  Public Interest

The Trust must show that the public interest favors a preliminary injunction. The public interest is disserved by restraining the lawful business practices of a well-established company. *See Chase Manhattan Bank v. Dime Sav. Bank of N.Y.*, 961 F. Supp. 275, 277 (M.D. Fla. 1997) (in denying a motion for temporary restraining order, the court was "unwilling to restrain the actions of persons who could be lawfully engaging in free enterprise."). It is not disputed that Dean Guitars is a reputable business, founded in 1976, and a well-known distributor of guitars. (Doc. 89-1, ¶ 3). These guitars include the Stealth and Razorback guitars, among others. (Doc. 89, ¶¶ 10, 13). Public interest weighs in favor of denying the Trust's request to restrain Dean Guitars' business.

## V.  Conclusion

The Trust failed to satisfy any of the four elements required for issuing a preliminary injunction. It is **RECOMMENDED** that the Trust's motion for preliminary injunction (Doc. 46) be **DENIED**.

**ENTERED** in Tampa, Florida on August 10, 2022.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

### NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely under 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.